# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEODIA CARROLL,<br><br>                              Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>                              Defendant. | CASE NO. 06CV0666 IEG (JMA)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION CHALLENGING CERTIFICATION; and (2) GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE**<br><br>[Doc. Nos. 8, 21.] |

Presently before this Court is the plaintiff Veodia Carroll's ("plaintiff") motion challenging certification (Doc. No. 15, 21.) Also before this court is the defendant United States of America's ("defendant") motion to dismiss the plaintiff's action with prejudice. (Doc. Nos. 8, 11, 19.) For the following reasons the court DENIES plaintiff's motion to challenge certification and GRANTS the defendant's motion to dismiss the plaintiff's action with prejudice.

## BACKGROUND

**Factual Background**

This case arises out of an automobile accident that occurred between the plaintiff and United States Marine Corps Gunnery Sargen6t David McCullough ("GySgt. McCullough") on April 20, 2004. (Memorandum of Point and Authorities In Support of Plaintiffs's Challenge to Certification ("Plaintiff's Memo. ISO Motion at 1.)  The accident occurred at or near Vandergrift Road and

1  Rattlesnake Canyon Road on the United States Marine Corps Base, in Camp Pendleton, California.
2  (Government's Opposition to Plaintiff's Challenge to Certification ("Defendant's Opp.") at 1.) Camp
3  Pendleton is a federal military facility with limited access to the general public, guarded entrances,
4  and a fenced perimeter. (Declaration of Captain Kevin Lyster in Support of Government's Opposition
5  to Plaintiff's Challenge to Certification ("Lyster Decla. ISO Defendant's Opp."), Exhibit A, ¶ 2.)
6  Because of its status as a federal military base, the camp's gates, facilities, byways, and personnel are
7  under control by the United States Marine Corps.[1] (Id. ¶ 4.)  Furthermore, the active duty military
8  personnel on Camp Pendleton are subject to the military's rules and regulations, specifically regarding
9  the presentation of appropriate military identification and military uniform. (Id. ¶¶ 6-11.)

10  GySgt. McCullough serves with the 1st Marine Division as a Combat Camera Chief.
11  (Defendant's Opp. at 2.) In that position, GySgt. McCullough must travel to various locations across
12  Camp Pendleton to work on his particular assignments. (McCullough Declaration in Support of
13  Defendant's Opposition ("McCullough Decla. ISO Defendant's Opp."), Exhibit B, ¶ 9.) When he is
14  not actively working on a specified assignment within Camp Pendleton, GySgt. McCullough works
15  at his designated on-base office called 33 Area. (Id.) Because of his personal status, no suitable on-
16  base housing was available to GySgt. McCullough, so he lived off base. GySgt. McCullough
17  commuted from his home to the base and onward to his on-base office at 33 Area with his private
18  vehicle. (Id. ¶ 15.) During the month of April 2004, GySgt. McCullough's official duty began at
19  0730 hours. (Id. ¶ 10.)

20  On the morning of the accident, GySgt. McCullough entered Camp Pendleton through the
21  guarded gate commonly referred to as Douglas Gate at approximately 0730 hours. (Defendant's Opp.
22  at 2.) He was in official military uniform as he entered the base. (Id.) Upon entering the base at
23  Douglas Gate, GySgt. McCullough proceeded to Base Exchange[2] to purchase the appropriate rank
24  insignia, also known as chevrons, as required for his official combat uniform. (Id.) From the Base
25  Exchange, he was en route to his on base office at Area 33, when the collision occurred. (Id.)

---

[1] Entry into and exit out of Camp Pendleton is limited to seven guarded and controlled access gates. (Opp. at 1.) In addition, driving within Camp Pendleton requires registration of the vehicle with the base and compliance with Camp Pendleton's traffic regulations. Id.

[2] Base Exchange is the on-site location to purchase required military paraphernalia, such as official uniform insignia. (McCullough Decla. ISO Defendant's Opp. ¶ 11.)

1  The plaintiff was a civilian employee of the Department of Defense stationed at Camp Pendleton. (Hariton Declaration in Support of Plaintiff's Challenge to Certification ("Hariton Decla. ISO Plaintiff's Motion"), Exhibit 4, Condensed Transcript of Veioda Carroll, pg. 5.) According to the plaintiff,[3] she was located approximately 15 miles within Camp Pendleton on the Morning of April 20, 2004. (Hariton Decla. ISO Plaintiff's Motion, Exhibit 4, Condensed Transcript of Veioda Carroll, pg. 4.) The plaintiff was driving on Rattlesnake Canyon Road at approximately 7:30 a.m on her way to a work training session. (Hariton Decla. ISO Plaintiff's Motion, Exhibit 4, Condensed Transcript of Veioda Carroll, pg. 4.) The accident occurred shortly thereafter when GySGt. McCullough's car struck the rear of plaintiff's car while stopped at a traffic signal. (Plaintiff's Memo. ISO Motion at 1.) The impact of the collision caused the car to move into a shallow embankment adjacent to the road. (Hariton Decla. ISO Plaintiff's Motion, Exhibit 4, Condensed Transcript of Veioda Carroll, pg. 5.) From there the plaintiff was taken to the military hospital for treatment. (Id. at pg. 6.) The plaintiff received worker's compensation through the Department of Labor under the Federal Employee's Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8193. (Wallace Decla. ISO Defendant's Motion, Exhibit 2, United States Department of Labor Correspondence.) Plaintiff filed this action approximately one year later. (Hariton Decla. ISO Plaintiff's Motion, Exhibit 1, Complaint in Case GIN044154, pg. 1.)

**Procedural Background**

On April 29, 2005, the plaintiff filed a complaint for personal injury and property damage in San Diego County Superior Court naming GySgt. McCullough as the primary defendant.[4] (Hariton Decla. ISO Plaintiff's Motion, Exhibit 1, Complaint in Case GIN044154, p. 2.) The complaint alleged that GySgt. McCullough's negligence in operating his automobile caused property and physical injury to the plaintiff. (Hariton Decla. ISO Motion, Exhibit 1, p. 6.)

On March 24, 2006, the defendant United States filed in this Court a Notice of Removal

---

[3]The plaintiff did not provide a statement of facts in her memorandum to support her argument so the Court relies upon the defendant's statement of facts and the transcript of the plaintiff's deposition to construct a time line of the events that occurred on April 20, 2004. (Hariton Decla. ISO Plaintiff's Motion, Exhibit 4, Condensed Transcript of Veioda Carroll, pg. 5.)

[4] Both the plaintiff's and the defendant's memoranda in support of their respective motions misdate the filing of the original complaint, which occurred April 29, 2005. (Memo. ISO Motion at 2; Opp. at 1.)

1 asserting authority to remove the case from California state court pursuant to 28 U.S.C. §2679(d)
2 because the action sought damages arising from the alleged negligence of an agent of the United
3 States. (Doc. No. 1.) The defendant also filed a Certification by the Attorney General of the United
4 States stating Gysgt. McCullough was acting within the scope of his employment with regard to the
5 allegations in the plaintiff's complaint. (Doc. No. 2.) On April 10, 2006, this Court granted the
6 defendant's motion to substitute the United States for Gysgt. McCullough as the proper defendant.
7 (Doc. No. 6.)

8 On May 25, 2006, the defendant filed a Motion to Dismiss Plaintiff's Complaint and Action
9 with Prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3). (Doc. No. 8, 11,
10 19.) On July 25, 2006, the plaintiff filed a motion challenging the certification of the Attorney
11 General and requested that this Court resubstitute GySgt. McCullough as the primary defendant and
12 remand the case to state court. (Doc. No. 15, 21.) That same day, the plaintiff filed her opposition
13 to the defendant's Motion to Dismiss. (Doc. No. 12.)

14 **DISCUSSION**

15 The plaintiff challenges the Attorney General's certification of GySgt. McCullough, (Doc.
16 No. 2), as an employee acting within the scope of his employment at the time of the accident and
17 the substitution of parties that followed. (Plaintiff's Memo. ISO Motion at 2.) The plaintiff argues
18 that the Attorney General erroneously certified GySgt. McCullough because he was not acting
19 within the scope of his employment at the time of the alleged incident. Id. at 1. If the certification
20 was indeed improper, GySgt. McCullough should be substituted back in as the defendant, and
21 plaintiff should be allowed to pursue state remedies against him in his personal capacity. Id. The
22 government argues that the certification and substitution were proper. (Defendant's Opp. at 3-8.)
23 As such, the government argues that the plaintiff's claim is barred by her previous recovery.
24 (Defendant's Memo. ISO Motion at 2.)
25 ///
26 ///
27 ///
28 ///

**A.     Plaintiff's Challenge to Certification**

1.     Legal Standard

The Federal Employees Liability Reform and Compensation Act ("FELRTCA"),[5] 28 U.S.C. §2679 (2000), immunizes United States employees from liability if they commit an alleged tort while acting within the scope of their office or employment. Green v. Hall, 8 F.3d 695, 698 (9th Cir.1993). According to 28 U.S.C. §2679(d)(2), the Attorney General of the United States is authorized to certify that a defendant employee acted within the scope of his employment at the time of the alleged tort that is the basis for a state civil action against that employee.[6] Meridian Int'l Logistics, Inc. v. United States, 939 F.2d 740, 743 (9th Cir.1991). Certification by the Attorney General requires the substitution of the United States as the defendant in place of the employee. Green, 8 F.3d at 698. Once certification is given in a civil action, federal law mandates both the substitution of the United States as defendant and, if the case is pending in state court, removal of the action to federal court. 28 U.S.C. § 2679(d)(2). This substitution generally leaves the FTCA as the single avenue of recovery for plaintiffs against the United States government for alleged misconduct by government employees within the scope of their employment. See Wilson v. Drake, 87 F.3d 1073, 1076 (9th Cir. 1996).

Although the Attorney General's certification is conclusive for purposes of removal, the certification itself is subject to judicial review for purposes of substitution. Gutierrez de Martinez

---

[5] FELRTCA is also known as the "Westfall Act," and amended the FTCA in 1988. See Pub. L 100-694, §5 (1988). The purpose of the Westfall Act was to "remove the potential personal liability of Federal employees for common law torts committed within the scope of their employment, and ⋯ instead provide that the exclusive remedy for such torts is through an action against the United States under the Federal Tort Claims Act." H.R. Rep. No. 100-700, at 4 (1988).

[6] 28 U.S.C. §2679, in relevant part states:
> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed . . . to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States . . . and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal. 28 U.S.C. §2679(d)(2).

Under the administrative regulation, 28 C.F.R. 15.3 (2000), the Civil Division Chief of the Department of Justice has delegatory authority to make these employment certifications.

v. Lamagno, 515 U.S. 417, 434 (1995); Meridian Int'l Logistics, Inc. v. United States, 939 F.2d 740, 745 (9th Cir.1991). Certification by the Attorney General is prima facie evidence that a federal employee was acting in the scope of her employment at the time of the incident and is conclusive unless challenged. Billings v. United States, 57 F.3d 797, 800 (9th Cir. 1995); Green v. Hall, 8 F.3d 695, 698 (9th Cir. 1993). The party seeking review of the certification bears the burden of presenting evidence and disproving the propriety of the certification by a preponderance of the evidence. Green, 8 F.3d at 698. The district court is authorized but not required to conduct an evidentiary hearing and resolve any disputed factual questions in challenges to a scope of employment certification. Pelletier v. Federal Home Loan Bank, 968 F.2d 865, 874 (9th Cir.1992); see also McLachlan v. Bell, 261 F.3d 908, 910-11 (9th Cir.2001). The Attorney General's decision regarding certification is subject to de novo review in the district court. Meridian, 939 F.2d at 745.

In conducting a de novo review of a certification, the district court applies the "principles of respondeat superior of the state in which the alleged tort occurred." McLachlan, 261 F.3d at 911 (citing Pelletier, 968 F.2d at 876); see also Wilson v. Drake, 87 F.3d 1073, 1076 (9th Cir.1996), cert. denied, 520 U.S. 1142 (1997). Under the doctrine of respondeat superior, an employer is held vicariously liable for torts committed by an employee within the scope of employment. See e.g., Dubret v. Holland America Line Westours, 25 F. Supp. 2d 1151, 1152-53 (W.D. Wash. 1998). In the instant action, it is not disputed that California respondeat superior law applies because the collision occurred on Camp Pendleton, which is wholly located in California. (Plaintiff's Memo. ISO Motion at 3; Defendant's Opp. at 3.)

California courts have interpreted the respondeat superior doctrine broadly to hold employers vicariously liable for a wide range of their employees' tortious activities.[7] Generally speaking, so long as an employee's tortious acts arise out of or concern the employment, the acts fall within the scope of the employment and the employer is held liable. Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992, 1004 (1995); see also McLachlan, 261 F.3d at 910-11

---

[7] The rationale behind California's respondeat superior doctrine is threefold: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." Mary M. v. City of Los Angeles, 54 Cal.3d 202, 209 (1991).

1  (holding that defendants were acting within the scope of their employment under where their conduct "took place at work, in ways relating to work, on issues arising out of the work all of them did"). There are two commonly used tests to determine the scope of employment under California law. See e.g., Martinez v. Hagopian, 182 Cal. App.3d 1223, 1228 (1986). An employee acts within the course or scope of his employment where: "1) the act performed was either required by or 'incident to his duties'; or 2) the employee's misconduct could be reasonably foreseen by the employer in any event." Id.; see also Perez v. Van Groningen & Sons, Inc., 41 Cal.3d 962, 968 (1986); Avila v. Standard Oil Co., 167 Cal. App. 3d 441, 447 (1985); Clark Equip. Co. v. Wheat, 92 Cal. App. 3d 503, 520 (1979). In California, the test for foreseeability is whether "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem to include the loss resulting from it among other costs of the employer's business." Farmers Ins. Group, 11 Cal.4th at 1004 (citation omitted).

Under California's broad interpretation of respondeat superior, an employee's tortious conduct can fall within the scope of employment even if it directly contravenes an express business policy or an employer's order. Farmers Ins. Group, 11 Cal.4th at 1004; Mary M., 54 Cal.3d at 208. Courts have even found acts that do not benefit the employer or are malicious in nature as within an employee's scope of employment. See Perez, 41 Cal.3d at 968. The scope of employment is not limitless as acts in substantial deviation of the employee's duties for personal reasons are imputed upon the employer. Id. But these acts outside the scope of employment are those where it is clear that "neither directly nor indirectly could [the employee] have been serving [the] employer." Farmers Ins. Group, 11 Cal.4th at 1005.

b. Analysis

The plaintiff advances two points, one legal and one factual in nature, in support of her argument that the certification was improper. First, plaintiff argues that the Attorney General's decision to certify was based on an erroneous understanding of the "Premises Line Rule," a doctrine in California workers' compensation law. Second, the plaintiff argues that certain responses by GySgt. McCullough submitted while this case was in state court indicate that he was actually traveling to work at the time of the accident and thus not within the scope of his employment.

1    Under California's workers' compensation law, the "Premises Line Rule" states that an employment relationship begins when the "employee enters the employer's premises." <u>Hartline v. Kaiser Foundation Hospitals</u>, 132 Cal. App. 4th 458, 467-68 (2005). Although the test for determining whether an employee was injured within the course of employment for workers' compensation purposes is "closely related" to the test for determining the scope of employment for respondeat superior liability purposes, the two are not identical. <u>Id.</u> at 468. As a result, in <u>Hartline</u>, the California Court of Appeal held that the "Premises Line Rule" does not apply in the respondeat superior context. <u>Id.</u> at 469. Instead, traditional respondeat superior analysis is appropriate. <u>Id.</u> at 469-70. According to California law, as articulated in <u>Martinez</u>, 182 Cal. App. 3d at 1228, an employee acts within the scope of employment when the employee's conduct is: 1) fairly characterized as typical of or incidental to the employment duties; or 2) reasonably foreseeable from the employment.

Plaintiff argues that this Court should grant her motion for decertification based on <u>Hartline</u>. (Plaintiff's Memo. ISO Motion at 5.) However, plaintiff's misinterprets the holding in <u>Hartline</u> and takes it one step too far. The case does not hold, as plaintiff argues, that because the "Premises Line Rule" does not apply in respondeat superior analysis, an employee who is not physically located at his work area or who is traveling to work always acts outside the scope of employment.[8] (Plaintiff's Memo. ISO Motion at 5-6.) <u>Hartline</u> directs this Court to undertake the respondeat superior analysis under California law. <u>Hartline</u>, 132 Cal. App. 4th at 463. Under this analysis, the Court finds that GySgt. McCullough was acting within the scope of his employment and the certification was proper.

Driving on base roads is a typical element of GySgt. McCullough's duties as a technical specialist on an sprawling multi-site military location. The collision on April 20, 2004 occurred miles inside GySgt. McCullough's general work environment, Camp Pendleton, while he was on

---

[8] Being away from the workplace does not preclude a finding that an employee was acting within the scope of employment under California law. Courts have regularly imputed liability to employers for accidents involving employees who were not on the employer's premises and were traveling home based on foreseeability of risk. <u>See e.g.</u>, <u>Bussard v. Minimed, Inc.</u>, 105 Cal. App. 4th 798 (2003); <u>Childers v. Shasta Livestock Auction Yard, Inc.</u>, 190 Cal. App. 3d 792 (1987).

1  duty.[9] Camp Pendleton is an expansive military base that spans several square miles with multiple
2  structures connected through a network of roads. (Lyster Decla. ISO Defendant's Opp. ¶¶ 2-12.)
3  Traveling through an expansive military complex is not like walking through an office building.
4  GySgt. McCullough's duties as Combat Camera Chief require him to drive a vehicle to various
5  locales within the base daily, depending on the particular need. (Defendant's Opp. at 1-2.)
6  Specifically, he must drive his vehicle on Rattlesnake Canyon Road to reach any specific project
7  requiring his attention or his on-base office at Area 33. (Id. at 4.) Because he did not live within
8  walking distance of his office, GySgt. McCullough needed to drive his personal vehicle to the base
9  and through the base. (Id.) The morning of the collision he had driven his vehicle to attend to a
10 work-related errand as required by military and base regulations. ("McCullough Decla. ISO
11 Defendant's Opp."), Exhibit B, ¶ 11.) He was proceeding to his personal base office at the time of
12 the collision with the plaintiff. (Id.) Furthermore, the plaintiff, who was employed on Camp
13 Pendleton on the morning of the accident, was driving her personal vehicle on base roads to attend
14 a training seminar. (Hariton Decla. ISO Motion, Exhibit 4, pg. 4.) Driving on base was necessary
15 in order to carry out workplace responsibilities not just for the defendant, but for the plaintiff as
16 well. Thus, driving is properly characterized as a element typical of the working environment in
17 which Sgt. McCullough and the plaintiff both operated. Lisa M. v. Henry Mayo Newhall
18 Memorial Hospital, 12 Cal.4th 291, 298 (Cal. 1995).
19      In addition, a vehicle collision is a risk that is generally foreseeable as a result of GySgt.
20 McCullough's duties. Cf. Lazar v. Thermal Equipment Corp., 148 Cal. App. 3d 458, 464 (1983);
21 Rodgers v. Kemper Construction Co., 50 Cal. App. 3d 608, 618 (1975). As the court in Rodgers
22 stated, foreseeability means that "in the context of the particular enterprise an employee's conduct
23 is not so unusual that it would seem unfair to include the loss resulting from it among other costs
24 of the employer's business." Rodgers, 50 Cal. App. 3d at 619. In the instant case, it is
25 foreseeable, indeed expected, that federal employees on Camp Pendleton would be traveling in
26 automobiles as this is the most feasible mode of transportation in such a location. GySgt.

---

[9] An employee's physical locus on or off the employer's premises at the time of the incident is permissible consideration for courts within the scope of employment analysis. Cromwell v. Los Angeles Ry. Corp., 102 Cal. App. 499, 502-03 (Cal. App. 1929).

1  McCullough, with his specific job description, was required to travel by car between multiple sites
2  within the base to attend to his projects and return to his onsite office.  Thus, an automobile
3  accident involving GySgt. McCullough on Camp Pendleton grounds  is a risk that is generally
4  foreseeable from his employment.

5  Plaintiff's second argument, which is factual in nature, is also unavailing.  Plaintiff points
6  to a written interrogatory answer of four words by GySgt. McCullough to support her contention
7  that he was not acting in the scope of his employment.  (Plaintiff's Memo. ISO Motion, at 7-8.)
8  The form interrogatory, which was submitted to GySgt. McCullough prior to removal and
9  substitution, asked: "At the time of the incident, were you acting as an agent or employee for any
10 person." (Hariton Decla. ISO Plaintiff's Motion, Exhibit 2, pg. 3).  He responded that he "was
11 traveling to work." (Hariton Decla. ISO Plaintiff's Motion, Exhibit 3, pg. 2.)

12 Plaintiff uses this response to analogize the instant case to the scenario in Hartline.  As
13 explained above, however, Hartline emphasizes only that courts must undertake the scope of
14 employment analysis under the accepted respondeat superior principles of California law, which
15 consider the full context of the particular employment.  See e.g., Lisa M., 12 Cal.4th at 299.
16 GySgt. McCullough's one unelaborated response to a written interrogatory should not be accorded
17 controlling weight on the issue.[10]  The court must examine the employee's duties and employment
18 situation and determine what is foreseeable or incidental therein.  See e.g., Saks v. Charity Mission
19 Baptist Church, 90 Cal. App. 4th 1116, 1139 (2001) ("Under California law, the employee's
20 motive . . . is one factor, albeit not the determinative factor, in the application of respondeat
21 superior.  The general rule we apply is that the tort must foreseeably arise from the employee's
22 duties.") (citations omitted).  Having undertaken the scope of employment analysis, this Court is
23 satisfied that GySgt. McCullough was acting within the scope of his employment under California
24 law.  The nature of the employer's workplace and his employment duties not only created the
25 requisite condition but also the foreseeable risk for the collision. GySgt. McCullough's statement
26 does not undermine this analysis.

---

28  [10]Assuming GySgt. McCullough's statement is construed as an admission on his perception of whether he was at work, plaintiff has not provided any case law to suggest the employee's subjective opinion controls so that courts should not engage in the traditional respondeat superior analysis.

In sum, plaintiff has failed to meet her burden of disproving the Attorney General's scope of employment certification by a preponderance of the evidence.[11]  Accordingly, the court finds that the certification was not erroneous.  The substitution of the United States as defendant and removal from state court were likewise appropriate.

**B.     Defendant's Motion to Dismiss**

   1.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court as the federal courts are courts of limited subject matter jurisdiction. See, e.g., Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039-40 (9th Cir. 2003).  Consequently, it is presumed that jurisdiction lies outside this Court and the plaintiff bears the burden of establishing the propriety of the court's jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); cf. Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983) ("The party who sues the United States bears the burden of pointing to such an unequivocal waiver of immunity.").

A motion to dismiss under Rule 12(b)(1) can be either "factual" or "facial."[12]  Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  If the defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to demonstrate the existence of jurisdiction, the Court's inquiry is much the same as when ruling on a motion to dismiss brought under Rule 12(b)(6). 2 Moore's Federal Practice § 12.30 (2004).  Specifically, the Court must assume that the factual allegations in the complaint are true and construe them in the

---

[11] Lastly, the plaintiff argues that the case law is unclear whether remand is required where the removal was based on an improper certification. (Plaintiff's Memo. ISO Motion at 3.)  Because this Court concludes the Attorney General's certification and subsequent substitution of the United States as the defendant is proper, it need not address this argument regarding the proper procedural disposition of a case in light of an improper certification.

[12] Where a defendant brings a "factual attack," the court's decision is based on extrinsic evidence quite apart from the pleadings, without converting the motion to one for summary judgment. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  In ruling on a factual attack, a court may weigh the evidence and determine the facts in order to satisfy itself as to its power to hear the case.  Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). Once the defendant has introduced evidence attacking the factual basis for the court's jurisdiction, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage, 343 F.3d at 1039 n.2 (citation omitted). Under this standard, no presumption of truthfulness attaches to the allegations in the plaintiff's complaint. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

1  light most favorable to the plaintiff.  Miranda v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir. 2000),
2  cert. denied, 534 U.S. 1018 (2001); Gould Elecs., Inc., 220 F.3d at 176.  Additionally, the court
3  must construe the factual allegations in the light that is most favorable to the plaintiff.  Love v.
4  United States, 915 F.2d 1242, 1245 (9th Cir. 1989).   A Rule 12(b)(1) motion will be granted if the
5  complaint, when considered in its entirety, fails on its face to allege facts sufficient to establish
6  subject matter jurisdiction.  Thornhill Publishing Co. v. General Tel. & Electric Corp., 594 F.2d
7  730, 733 (9th Cir. 1979).
8        2.    Analysis
9        The defendant has brought a facial attack on the plaintiff's complaint, arguing the
10  complaint fails to allege facts that establish this Court's subject matter jurisdiction.  More
11  specifically, defendant moves to dismiss the plaintiff's complaint arguing that FECA provides the
12  sole remedy for the plaintiff, who was an employee of the United States Department of Defense at
13  time of the accident.  (Memorandum of Points and Authorities in Support of Defendant's Motion
14  to Dismiss Action and Complaint with Prejudice ("Defendant's Memo. ISO Motion,") at 4.)  The
15  plaintiff does not counter the defendant's facial challenge to the complaint.  Instead, the plaintiff
16  has chosen to challenge the underlying certification by the Attorney General and the subsequent
17  substitution of the United States as the primary defendant, reiterating the argument she makes in
18  her Motion Challenging Certification.  (Memorandum of Points and Authorities in Support of
19  Plaintiff's Opposition to Motion to Dismiss ("Plaintiff's Opp.") at 3.)
20        FECA, 5 U.S.C. § 8101 *et seq.* (2000), provides compensation to federal employees for
21  injuries sustained while performing their duties. 5 U.S.C. § 8102; see also United States v.
22  Lorenzetti, 467 U.S. 167, 169 (1984) ("Federal employees who are injured while engaged in the
23  performance of their official duties are entitled under FECA to compensation for medical
24  expenses, lost wages, and vocational rehabilitation. Because the United States' liability for
25  work-related injuries under FECA is exclusive, see § 8116(c), [plaintiff] cannot recover from the
26  United States for losses . . . not compensated under FECA."). Similar to worker's compensation
27  statutes of the states, FECA is the exclusive compensation scheme for federal employees in
28  regards to employment-related injuries.  Lockheed Aircraft Corp. v. United States, 460 U.S. 190,
    193, 194 fn.4 (1983); Moe v. United States, 326 F.3d 1065, 1068 (9th Cir. 2003).  The statutory

scheme is quite explicit that if compensation is available under FECA, all other statutory remedies for claims arising out of the same set of facts are foreclosed. See 5 U.S.C. §8116(c). In relevant part, 5 U.S.C. §8116 states:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. 5 U.S.C. §8116.

The Supreme Court noted that in enacting FECA, Congress intended the quid pro quo interchange in which the plaintiff receives the right to receive fixed benefits immediately in exchange for the right to sue the government. Lockheed Aircraft Corp., 460 U.S. at 193-194. Thus, FECA specifically bars an employee's subsequent attempt to collect from the United States government under the Federal Tort Claims Act ("FTCA"), by which the United States has waived its sovereign immunity.[13] See Lance v. United States, 70 F.3d 1093, 1094 (9th Cir. 1995) ("FECA would therefore clearly bar an FTCA suit by [plaintiff] to recover for the injury he suffered at work."); see also Reep v. United States, 557 F.2d 204, 207 (1977) (stating that federal employee may not bring an action under the FTCA if there is a substantial question as to whether his injuries are covered under FECA).

There is no dispute that the plaintiff Carroll was entitled to be compensated under FECA. The plaintiff did in fact receive worker's compensation benefits from the United States Department of Labor for injuries sustained in the collision with GySgt. McCullough. (Wallace Decla. ISO Defendant's Motion, Exhibit 2.) She is now seeking recovery in tort against the United States for the injuries she received as a result of the same car accident. Because of her receipt of workers' compensation benefits under FECA, however, the plaintiff is precluded from bringing a

---

[13] Under the doctrine of sovereign immunity, the state and federal governments are immune from suits by its citizens, except when the governments have given its consent to be sued. See, e.g., Bush v. Eagle-Picher Industries, Inc., 927 F.2d 445, 447 (9th Cir. 1991). In 1946, Congress enacted the FTCA which waived, for the first time, the United States' general immunity from tort liability for the wrongful or negligent acts of its agents/employees. The plaintiff's initial complaint in state court did not specify a cause of action under the FTCA as against the United States, but the subsequent substitution of the United States renders the FTCA the federal statue applicable to this negligence action. 28 U.S.C. §1346(b) (2000).

1 negligence suit under the FTCA.  See Noga v. United States, 411 F.2d 943, 945 (9th Cir. 1969)

2 ("The statutory language, [5 U.S.C. §8116(c), is not ambiguous. It states that the United States is

3 not liable under the FECA and the Federal Tort Claims Act, but only under the FECA.").   In these

4 situations, the Court does not properly have jurisdiction over the plaintiff's action and the

5 complaint must be dismissed for lack of subject matter jurisdiction.  Ritchie v. United States, 210

6 F. Supp. 2d 1120, 1123-24 (N.D. Cal. 2002).

## CONCLUSION

For the reasons stated herein, the Court DENIES the plaintiff's Motion Challenging Certification (Doc. No. 15, 21).  The Court GRANTS the defendant's Motion to Dismiss with Prejudice, (Doc. No. 8, 11, 19), hereby terminating this case.

**IT IS SO ORDERED.**

**DATED:  October 27, 2006**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**